UNITED STATES BANKRUPTCY COURT
SOUTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:                                                                                    Chapter 11

BPB DRUGS, INC. d/b/a GALLERY DRUG.,                     Case No. 22-11656 (PB)

                                            Debtor.
----------------------------------------------------------------X

**DECLARATION OF MARTIN PAUKER
IN SUPPORT OF APPLICATION FOR ENTRY OF
ORDER AUTHORIZING EMPLOYMENT AND RETENTION
OF TRACHTENBERG & PAUKER, LLP AS ACCOUNTANTS FOR THE
<u>DEBTOR *NUNC PRO TUNC* AS OF THE COMMENCEMENT DATE</u>**

      MARTIN PAUKER, pursuant to 28 U.S.C. § 1746 declares under the penalties of perjury as follows:

      1.      I am a Certified Public Accountant and a Partner of Trachtenberg & Pauker, LLP ("TP"), which maintains offices at 100 Crossways Park Dr. West, Woodbury, NY 11797.

      2.      I submit this Declaration in connection with the application (the "Application") of BPB Drugs, Inc. d/b/a Gallery Drug (the "Debtor" or the "Company"), in the above-captioned Chapter 11 Subchapter V case (the "Case"), to Retain TP as its accountants and to provide the disclosures required under Section 327(a) of Title 11 of the United States Code (the "Bankruptcy Code"), the Rules of this Court and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Except as otherwise indicated herein, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify thereto.

      3.      All terms not otherwise defined herein have the meanings ascribed to such terms in the Application.

### **Qualifications of TP**

4. The Debtor seeks to retain TP as its accountants because of the firm's general expertise and knowledge in the field of tax, accounting and financial advisory services. Furthermore, TP has become intimately familiar with the Debtor's business and operations, having served as the Debtor's accountants and tax preparers for over two decades. Thus, the Debtor desires that TP continue to provide services to it in connection with this case. The Debtor believes that TP's employment is in the best interest of the Debtor, its estate and its creditors.

### **Scope of Employment**

5. The professional services that TP expects to render to the Debtor include but shall not be limited to the following:

   a. Assisting the Debtor's management in its preparation of monthly operating reports, financial statements and related financial statements supporting the Debtor's schedules;

   b. Preparing and tax-related filings required by the Debtor;

   c. Providing on-going accounting advice as requested by Debtor's management; and

   d. performing all other accounting services for, and providing all other necessary advice to, the Debtor which may be necessary and proper in the case.

### **TP'S Disinterestedness**

6. To the best of my knowledge and information after due inquiry, TP has no connection with the Debtor, its creditors, any other party-in-interest herein or their respective attorneys or professionals; and does not hold or represent any entity having an adverse interest in connection with the Case, except as otherwise disclosed herein. For so long as it represents the Debtor, and absent further order of this Court, TP will not represent any entity other than the Debtor in connection with this Case.

7.      In connection with preparing this Declaration, I caused to be submitted to, and checked against, TP's Client Database all of the following information: (a) the Debtor; (b) the current directors and officers of the Debtor; (c) the unsecured creditors of the Debtor as provided by the Debtor on the Petition Date; (d) the Debtor's secured creditors; (e) the Debtor's professionals; and (f) to the extent known, the names of certain significant parties-in-interest in the case, against TP's current and former engagements, clients and adverse parties (collectively, the "Potentially Interested Parties").

8.      Based on the foregoing and except as set forth herein, neither TP, nor any partner, or associate thereof, insofar as I have been able to ascertain based on the information currently available to me, represents any interest adverse to the Debtor in the matters upon which TP is to be engaged.  To the best of my knowledge, information and belief, TP is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that TP, its partners, counsel and associates:

   a. Are not creditors, equity security holders or insiders of the Debtor;

   b. Are not and were not, within two years before the date of the filing of the Debtor's Chapter 11 Subchapter V petition, a director, officer or employee of the Debtor; and

   c. Do not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or for any other reason.

**Professional Compensation**

9. TP intends to apply for compensation for professional services rendered in connection with the Case subject to the approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, bankruptcy Rules, and Orders of this Court on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by TP. TP has advised the Debtor that the current hourly rates applicable professionals proposed to represent the Debtor are:

| | |
|---|---|
| Martin Pauker | $410.00 per hour |
| Michael Cowles | $375.00 per hour |
| Lara Levine | $175.00 per hour |

10. These rates are set at a level designed to fairly compensate TP for its work and to cover fixed and routine overhead expenses. It is TP's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, and transportation costs, as well as non-ordinary overhead expense such as overtime for secretarial personnel and other staff. TP will charge the Debtor's estate for these expenses in a manner and at a rate consistent with charges made generally to TP's clients. TP believes that these expenses should be fairly charged to the clients incurring them rather than to increase the hourly rates and spread the expense among all clients. In addition, TP intends to seek compensation for all time and expenses associated with its retention as section 327(a) professional, including the preparation of the Application, this Declaration, and related documents, as well as any monthly fees or interim or final fee applications.

11.     Other than as set forth herein, there is no proposed arrangement to compensate TP. TP has not shared, nor agreed to share (a) any compensation it has received or may receive with any other party or person, other than with the members and associates of TP, or (b) any compensation another person or party has received or may receive.

12.     Other than as set forth below, TP did not receive any payments from the Debtor in connection with this Chapter 11 case. Within ninety (90) days of the Commencement Date, TP received the following advanced fee retainer payments by or on behalf of the Debtor

| **Purpose** | **Amount Received** | **Payment Date** |
| --- | --- | --- |
| Retainer | $4,000.00 | 10/24/22 |
| Retainer | $4,000.00 | 10/31/22 |

13.     As the chart above indicates, TP received two advanced payments in the aggregate amount of $8,000.00 (the "Advance Payment Retainer") for actual and estimated professional fees and disbursements incurred for the period prior to the Petition Date and thereafter to the extent any monies remain.

14.     Prior to filing the Petition there remained an unpaid balance due TP in the sum of $5,200.00. TP has waived that amount. Any amounts due for prepetition unbilled fees and disbursements have been or will be paid from the Advanc e Payment Retainer. The balance of the Advance Payment Retainer, if any, will be held by TP as security for postpetition services and expenses until the end of the Case or such other time as the parties have agreed or this Court has ordered.

**Request for Approval of Retention of
TP *Nunc Pro Tunc* as of the Commencement Date**

15. TP has requested, and the Debtor has agreed, that TP's retention be made effective, *nunc pro tunc*, as of the Commencement Date in order to allow TP to be compensated for the work it has performed for the Debtor since the Petition Date, but prior to the Court's consideration of this Application. Under the circumstances I submit, such approval is warranted.

16. By reason of the foregoing, I believe TP is eligible for employment and retention by the Debtor pursuant to 327(a) of the Bankruptcy Code and the applicable Bankruptcy Rules.

I declare under the penalty of perjury of the laws of the United States and the State of New York that the foregoing is true and correct to the best of my knowledge and information. Executed this 26th day of January 2023

/s/ Martin Pauker
Martin Pauker