**UNITED STATES BANKRUPTCY COURT**
**SOUTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| **BPB DRUGS, INC. d/b/a GALLERY DRUG,** | **Case No. 22-11656 (PB)** |
| Debtor. | |

------------------------------------------------------------------X

DEBTOR'S PLAN OF REORGANIZATION

BPB DRUGS, INC. d/b/a GALLERY DRUG, debtor and debtor-in-possession (the "Debtor"), proposes the following Plan of Reorganization pursuant to the provisions of subchapter V of Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Code").

### ARTICLE I

Definitions

1. "Allowed Claim" (and any variation thereof including "Allowed Secured Claim" or "Allowed Unsecured Claim") shall mean a claim (i) for which a proof of claim has been filed before the Confirmation Date; or (ii) a claim scheduled by Debtor and not listed as disputed, unliquidated or contingent; or (iii) a claim as to which no objection has been filed on or before seven (7) days prior to the Effective Date and which has been finally allowed pursuant to §§ 502, 503, 505 and/or 506 of the Code; or (iv) a claim agreed upon by a claimant and the Debtor, and which is set out in this Plan.

2. "Amerisource Claim" shall mean the Allowed Secured Claim of Amerisourcebergen Drug Corporation, as successor to Amerisource Corporation.

3. "Avoidance Actions" shall mean any and all Claims and causes of action which the Debtor, the debtor in possession, the Estate or other appropriate party in interest has asserted or may assert under sections 502(d), 510, 542, 543, 544, 545, 547 through 552 and 553(b) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

4. "Carve-Out" shall mean the sum of the administrative expenses incurred by the Debtor in connection with the Chapter 11 Case other than those attributable to broker fees in connection with the Sale; *provided, however,* that in no event shall such amount exceed the amount of $35,000.00.

5. Chapter 11 Case shall mean *In re BPB DRUGS, INC. d/b/a GALLERY DRUG*, Chapter 11 Case No. 22-11656 (PB), in the United States Bankruptcy Court for the Southern District of New York.

6. "Chase Claim" shall mean the Allowed Secured Claim of JPMorgan Chase Bank, N.A., subject to payment of the Carve-Out.

      7.      "Claimant" shall mean the holder of an Allowed Claim.

      8.      "Class" shall mean a class of Claimants described in Article II.

      9.      "Code" shall mean title 11 of the United States Code, as made applicable to this case.

      10.      "Confirmation Date" shall mean the date of entry of an Order by the Court confirming this Plan.

      11.      "Confirmation Order" shall mean an Order of the Court confirming the Plan.

      12.      "Court" shall mean the United States Bankruptcy Court for the Southern District of New York wherein the Chapter 11 Case is pending.

      13.      "Debtor" shall mean BPB DRUGS, INC. d/b/a GALLERY DRUG.

      14.      "Effective Date" shall mean the thirtieth (30th) day following the Confirmation Date.

      15.      "Initial Settlement Payment" shall mean $25,000.00 to be paid by one or more of the Principals to the Estate on or before the Confirmation Date.

      16.      "Plan" shall mean this Plan of Reorganization, now and as it may later be further restated, amended, supplemented or modified. The Plan shall be interpreted in accordance with the Code. The terms used herein, including, but not limited to, such terms as "claim," "interest," "allowed," "secured," "unsecured," "affiliate," "insider," and "impaired" shall have the same meaning as under the Code.

      17.      "Principals" shall mean Neil Subes and Johnny Lee.

      18.      "Sale" shall mean the sale of Debtor assets consisting of saleable inventory, prescription records, patient files and telephone and facsimile numbers that were used in connection with the operation of its pharmacy to Corby Pharma, Inc., as approved by Order of the Bankruptcy Code entered on March 3, 2023 [Docket No. 37].

      19.      "Settlement Amount" shall mean the amount of $50,000.00 to be paid by one or more of the Principals to the Estate in exchange for the releases granted to such Principal(s) under the Plan as follows: (i) the Initial Settlement Payment; and (ii) thirty-six (36) equal monthly payments of $694.45 for three (3) years commencing on the Effective Date.

## ARTICLE II

### Classification of Claims and Interests

All claims and interests against the Debtor shall be divided into the following classes:

CLASS 1. Any Allowed Unsecured Claims for prepetition taxes, entitled to priority under § 507(a)(7) of the Code, including statutory interest on such taxes.

CLASS 2. The Chase Claim, to the extent it determined to be a secured claim pursuant Code § 506(a).

CLASS 3. The Amerisource Claim, to the extent it determined to be a secured claim pursuant Code § 506(a).

CLASS 4. The Allowed Unsecured Claims of non-insider general unsecured claimants of the Debtor, to the extent not included in another class of claims, including any claims arising from the rejection of executory contracts and unexpired leases.

CLASS 5. The Unsecured Claims of Neil Subes and Johnny Lee against the Debtors and equity security interests in the Debtor.

## ARTICLE III

A. <u>Treatment Of Claims and Interests Not Impaired Under the Plan</u>

<u>CLASS 1</u>. All Class 1 Allowed Claims, if any, shall be paid by Debtor in full, on the Effective Date.

<u>CLASS 2</u>. Subject to payment of the Carve-Out, all Class 2 Allowed Claims shall be paid by Debtor in full, on the Effective Date from the proceeds of Sale.

<u>CLASS 3</u>. All Class 3 Allowed Claims shall be paid by Debtor in full, on the Effective Date from the proceeds of Sale.

B. <u>Treatment Of Claims And Interests Impaired Under The Plan</u>

<u>CLASS 4</u>. Class 4 consists of all non-insider Allowed Unsecured Claims against the Debtor not entitled to priority. The Class 4 Claims shall be paid their pro rata proportion of the Settlement Amount on the Effective Date.

<u>CLASS 5</u>. Class 5 consists of all insider Unsecured Claims against the Debtor not entitled to priority and equity security interests in the Debtor. The Unsecured Claims of Neil Subes and Johnny Lee, if any, against the Debtor are hereby waived. Neil Subes and Johnny Lee shall retain their equity security interests in the Debtor under the Plan, but shall not receive any payment solely on account of that interest under the Plan.

ARTICLE IV

Means For Execution of the Plan

The Plan is to be implemented consistent with §§ 1123 and 1190 of the Code. The Plan will be funded by the proceeds of Sale, the Carve-Out, the Settlement Amount and proceeds of Avoidance Actions, if any.

ARTICLE V

Liquidation Analysis

Substantially all of the Debtor's assets have been sold during the pendency of this bankruptcy proceeding. The assets remaining in the Debtor's estate are of *de minimus* value and the only other source of funding available for distribution to the Holders of Allowed Unsecured Claims are being made available to Debtor by its insiders in the form of the Settlement Amount. In the event that the Plan is not confirmed, no amount will be distributed to Unsecured Creditors from the proposed Settlement Amount and there is likely to be no distribution to the Holders of Allowed Unsecured Claims. Conversion of the case to one under Chapter 7 would also add an additional layer of administrative expenses on account of the appointed Chapter 7 trustee. Accordingly, the Debtor submits that creditors will receive more on their claims as a result of confirmation of the Plan and distributions under the Plan than as a result of the conversion of this case to one under Chapter 7.

ARTICLE VI

Provisions For The Assumption And Rejection Of Executory Contracts And Unexpired Leases

As of the date of entry of an order confirming this Plan, the Debtor shall be deemed to have rejected each executory contract and unexpired lease not previously assumed.

ARTICLE VII

Post-Petition Management

The Debtor has ceased operations and will be wound down. Neil Subes will act on behalf of the Debtor to implement post-confirmation obligations under the Plan. There will otherwise be no need for anyone to manage the Debtor's business and financial affairs post-confirmation.

ARTICLE VIII

Substantial Consummation

As a condition precedent to substantial consummation of the Plan, all administrative expenses allowed under Code § 503(b) and approved by Court order after notice and hearing shall be paid in cash.

## ARTICLE IX

### Conditions Precedent

(a) It shall be a condition to Confirmation that all provisions, terms and conditions hereof are approved in the Confirmation Order.

(b) It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied:

  i. The Confirmation Order shall be a final Order in form and substance acceptable to the Debtor; and

  ii. The Initial Settlement Payment has been paid to the Estate.

## ARTICLE X

### Retention of Jurisdiction

The Court shall retain jurisdiction of this case under the provisions of the Code including, without limitation, § 1142(b) thereof and the Federal Rules of Bankruptcy Procedure to ensure that the intent and purpose of the Plan is carried out and given effect.

The Court shall retain jurisdiction for the following purposes:

(a) To consider amendments and modifications of this Plan pursuant to § 1193 of the Code;

(b) To hear and determine:

  (i) All controversies, suits and disputes, if any, as may arise with the interpretation or enforcement of the Plan post-confirmation;

  (ii) All controversies, suits and disputes, if any, as may arise between the holders of any class of claims and the Debtor;

  (iii) Applications for allowance of compensation and objections to claims;

  (iv) All controversies as provided by the Confirmation Order;

  (v) Any and all pending applications, adversary proceedings and litigation matters; and

(c) To make such orders as may be necessary or appropriate to carry out the provisions of the Plan.

ARTICLE XI

Discharge of Claims and Indebtedness/Settlement and Release

(a)     Discharge of Claims and Indebtedness.  Except as provided for herein, in accordance with §§ 524 and 1141 of the Code, all indebtedness of and claims against the Debtor shall be discharged in exchange for the rights acquired under this Plan.

(b)     Compromise and Settlement.  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and controversies by and amount this estate, on the one hand, and the Principals that contributed to the Settlement Amount, on the other hand. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other entities.

(c)     Releases by Debtor.  FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, THE PRINCIPALS THAT CONTRIBUTED TO THE SETTLEMENT AMOUNT ARE DEEMED RELEASED AND DISCHARGED BY THE DEBTOR, THE REORGANIZED DEBTOR AND ITS ESTATE FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS AND AVOIDANCE ACTIONS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, THAT THE DEBTOR, THE REORGANIZED DEBTOR, ITS ESTATE OR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE CHAPTER 11 CASE, THE DEBTOR'S SRESTRUCTURING, THE SALE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE NEGOTIATION, FORMULATION OR PREPARATION OF THE PLAN, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE CONFIRMATION DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES WILLFUL MISCONDUCT (INCLUDING FRAUD) OR GROSS NEGLIGENCE. FOR THE AVOIDANCE OF DOUBT, AND EXCEPT TO THE EXTENT LISTED IN THE RETAINED CAUSES OF ACTION FILED AS PART OF THE PLAN SUPPLEMENT, ALL AVOIDANCE ACTIONS ARE RELEASED PURSUANT TO THIS PLAN. THE FOREGOING RELEASE SHALL NOT APPLY TO ANY

EXPRESS CONTRACTUAL OR FINANCIAL OBLIGATIONS OR ANY RIGHT OR OBLIGATIONS ARISING UNDER OR THAT IS PART OF THE PLAN OR ANY AGREEMENTS ENTERED INTO PURSUANT TO, IN CONNECTION WITH, OR CONTEMPLATED BY THE PLAN.

## ARTICLE XII

### Assets of the Debtor

The entry of the Confirmation Order shall vest the assets of this estate and the Debtor in the reorganized Debtor, free and clear of all claims of creditors, except asset out in the Plan. –

## ARTICLE XIII

### Modification of the Plan of Reorganization

<u>Modification Before Confirmation</u> - Modification to the Plan may be proposed in writing by the Debtor at any time before entry of the Confirmation Order, provided the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Code, with the exception of subsection (a)(8) of § 1123. After the modification is filed with the Court, the Plan is modified.

<u>Modification After Confirmation</u> – If the Plan has been confirmed under § 1191(a) of the Code, the Plan may be modified at any time after entry of a confirmation order and before its substantial consummation, provided that such Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Code with the exception of subsection (a)(8) of § 1123, the circumstances warrant such modification and the Court, after notice and a hearing, confirms such Plan, as modified, under § 1191(a) of the Code.

<u>Effect of Modification on Balloting</u>. A holder of a claim or interest that has accepted or rejected the Plan and whose interests are not materially and adversely affected by the proposed modifications shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Court, the holder changes its previous acceptance or rejection.

## ARTICLE XIV

### General Provisions

The Subchapter V Trustee shall be discharged upon confirmation of the Plan and all payments required to be made under the Plan shall be made by the Debtor.

Confirmation of the Plan shall bind the Debtor and every creditor of the Debtor whether or not the claim of such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan.

In the event that all classes of claims and interests impaired under the Plan do not vote in favor of the Plan, Debtor requests that the Court nevertheless confirm the Plan pursuant to Code § 1191(b).

Dated: March 20, 2023

**BPB DRUGS, INC. d/b/a GALLERY DRUG**

By:   /s/ Neil Subes
      Neil Subes
      Authorized Representative

Prepared by:
Randolph E. White, Esq.
David Y. Wolnerman, Esq.
White & Wolnerman, PLLC
Attorneys for Debtor
950 Third Ave., 11th Floor
New York, New York 10022